Nov. Term,
1859.

THE PITTS-
BURGH, &c.,
RAILRO'D Co.
v.
KARNS.

THE PITTSBURGH, FORT WAYNE, AND CHICAGO RAILROAD COMPANY *v.* KARNS.

Where a team was frightened by the starting of a railroad engine, ran away, and in endeavoring to stop it, the driver was thrown under the wheel of the wagon and had his leg broken—both the driver and the agents of the company being engaged in lawful pursuits—it was held that if the accident occurred through negligence on the part of the company, and the negligence of the driver did not proximately contribute to it, he might recover; but not if negligence on the part of the driver concurred to produce it, or if it occurred entirely through his own negligence.

The judgment in this case was reversed, and the cause remanded for another trial, on the ground that the case was not properly put to the jury, and the Supreme Court was not satisfied that injustice had not been done.

APPEAL from the *Allen* Court of Common Pleas.

PERKINS, J.—*Sanford R. Karns* and *John Placinger*, in *January*, 1857, drove wagons, loaded with lard, &c., into the city of *Fort Wayne, Indiana*, and were bound for the warehouse of Mr. *Comparet.* That warehouse stood about three rods back from a railroad track, along which locomotives and cars were frequently passing, as was well known to *Karns* and *Placinger.* *Placinger* drove his wagon up to the warehouse first, and unloaded. While he was thus engaged, the locomotive, then on the track, and standing, when he drove up, at a platform, within four hundred feet or less of the warehouse, advanced twice, up near to the warehouse, and then retired to the platform. When *Placinger* had unloaded, and driven away from the warehouse, *Karns* drove up, passing along in full view of the locomotive, then at the platform. It

*Tuesday,
November 29.*

Nov. Term, 1859.

THE PITTS-
BURGH, &c.,
RAILRO'D Co.
v.
KARNS.

was near dusk, in the evening, and the locomotive had its head-light burning. *Karns* drove a covered wagon, and he did not remove the cover. He did not hitch his horses, nor have any one to hold them. He did not retain the lines by which he guided and controlled them, within his reach. Soon after he commenced unloading, the locomotive began to move towards the warehouse. Before it had advanced more than two hundred feet, *Karns'* horses, frightened, perhaps, by the head-light, started and ran a few rods, and then "slackened up," coming nearly to a halt, no damage as yet having been done; when, it would seem, *Karns* attempted to leap from the wagon on to the back of one of the horses to get hold of the lines, failed, fell before the wagon wheel, started the horses afresh, was run over and had his leg broken.

Taking the evidence, in connection with the short distance the locomotive had moved, the grade and curvature of the road, and the character of the engine, it is manifest the locomotive was moving, when the horses started, at a speed of less than four miles an hour. The great preponderance of evidence is, that the signal bell was rung, and the whistle blown. Two or three witnesses do not recollect that they heard either, and think there were no such signals, while an equal or greater number swear that both the signals were given.

Negative testimony of mere bystanders touching such facts, especially where there was nothing to call their attention particularly to the facts, and perhaps much to divert it upon other facts, is of very little weight. Every man's experience will bear out this assertion. A clock may strike a succession of hours, and one reading or talking, or otherwise engaged, in close proximity to it, will not notice the fact.

*Karns* sued the railroad company and recovered judgment for 3,000 dollars.

The accident to Mr. *Karns* happened, as the evidence shows, when both parties concerned were engaged in lawful pursuits. Mr. *Karns* had a right to go to *Comparet's*

warehouse, and deposit his load. But, in doing so, he could not but have known that he was going to a place in which the lawful pursuit of business by the railroad company would expose him to danger; and, hence, would impose upon him the obligation of exercising caution to avoid accident. That his conduct exhibited an utter disregard of caution, there can scarcely be a doubt. Still, if this want of caution did not proximately contribute to the accident, and the carelessness of the railroad company alone was the immediate cause of it, *Karns* might recover.

The only carelessness alleged against the railroad company is, that no signal was sounded when the locomotive started, and that it moved at a rate of speed exceeding four miles an hour.

Concede, for the purposes of this case, that these facts existed, the questions would then arise, did they occasion the accident? And, even if they contributed to it, did the carelessness of *Karns* also concur with them immediately to its production? If the company failed to ring the bell and blow the whistle, still, if such failure did not cause the horses to run away, the company are not liable. If the whistle and the bell would more likely have frightened the horses than otherwise, from the nearness of the engine to them; or, if *Karns* would have pursued no different course from that which he did pursue, if these facts had occurred, he was not injured by their non-occurrence.

Again, if the accident to *Karns* happened after the horses had "slackened up," through his own rashness, or foolhardiness in attempting to jump from his wagon on to the back of his horse, when he might have got out upon the ground, or remained in the wagon, without injury, surely, it might be inferred by a jury that his own wrong contributed directly to the injury of which he complains.

Without detailing the proceedings in the Court below, we remark, generally, that the case was not put to the jury as it should have been, and we do not feel satisfied that injustice has not resulted. See the cases of *Button* v. *The Hudson River Railroad Co.*, 18 N. Y. R. 248; *Steves* v. *The Oswego, &c., Railroad Co.*, *id.* 422.

Nov. Term,
1859.

THE LAFAY-
ETTE PLANK-
ROAD CO.
v.
THE NEW
ALBANY, &C.,
RAILRO'D CO.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*F. P. Randall* and *W. W. Carson,* for the appellants.