GREAT WESTERN RAILROAD COMPANY, Plaintiffs in Error, *v.* SAMUEL MORTHLAND, Defendant in Error.

ERROR TO MACON.

Where the evidence shows that a horse got upon a railroad track within the corporate limits of a city, and was driven by the train and finally killed, at or beyond the city limits, and there was no evidence of negligence on the part of the company: *Held*, that the owner could not recover. The question whether the track was fenced where the accident occurred, could not affect the liability of the company, because the horse got upon the track where the company was in no event bound to keep up a fence.

The mere killing of an animal by a railroad company, does not render the company liable, unless it has been guilty of negligence, or the case comes within the statute of 1855.

THIS was an action of trespass on the case brought by the defendant in error, Morthland, to the November term, 1861, of the Macon Circuit Court.

The declaration contains two counts. In the first, it is alleged, that on the 16th day of October, 1860, the defendant had possession and control of the "Great Western Railroad," and had the right to use and operate the same, and run engines and trains, etc., thereon, and that he did so use the same; that the said road had been open for use more than six months prior to the committing of the grievances, etc.; that it was the duty of defendant to erect, and keep in good repair on each side of said road, fences, sufficient to prevent horses, cattle, sheep, and hogs from getting on said railroad, except at the crossing of public roads, and within the limits of towns, cities and villages, with opening gates or bars at farm crossings, etc., and to construct and maintain, at public road-crossings, suitable and sufficient cattle-guards, etc., and to erect and maintain such fences on all unenclosed lands within five miles of any settlement, etc., and except what owners of lands had fenced, or agreed with said company to fence, etc.; that, nevertheless, defendant failed to perform these various duties, by means whereof the horse of the plaintiff, of the value of $150, strayed and got on to said railroad on the day and year aforesaid, and on divers other days since, and that the defendant, by its servants, so carelessly, negligently, and improperly run, conducted, and directed the engines and trains of defendant, that by means thereof and through such carelessness, neglect and improper conduct of said servants, run the engine upon the horse of plaintiff, by and through the neglect of defendant to erect and keep in repair, etc., and did thereby kill the said horse for the want of good fences without the limits of cities, towns and villages, and within five miles of settlements on and along said road, and for the want of cattle-guards, etc.

The second count alleges that the horse was killed by means of the gross willfulness, carelessness and neglect of the servants of defendant in running the engines and trains.

Plea, Not guilty.

Trial. Verdict for plaintiff; motion for a new trial overruled, and judgment for plaintiff, and exception by defendant.

The evidence for the plaintiff below was as follows:

*Henry Waggoner*, witness for plaintiff, went with him about one-fourth of a mile east of the depot, at Decatur, where plaintiff's horse was said to have been killed; saw signs —hair, blood and part of a saddle girth on road ties; this was more than one hundred yards from any public road; horse worth $135; thinks horse was in cattle-guard when struck by train; saw fresh horse manure and horse tracks in cattle-guard; the guard reaches across the track, is some five or six feet wide, and eighteen or twenty inches deep; was covered with slats on one side and open on the other; there is a line of fence running nearly north and south across the road at this point, but it does not pass directly across. Some eight or ten feet from the road the fence on both sides bends east for a couple of pannels and joins cattle-guard in shape of a funnel, the guard being a few feet east of the general direction of the fence. This is outside of the city limits. The horse seemed to have been thrown from the track fifty or sixty feet east of guard; signs of hair and blood from the guard to that point; there were indications that the horse was going east. According to recorded plats the city limits are one-fourth of a mile east of the depot. Peddecord & Burrow's addition is part of the south-east one-fourth of south-east one-fourth of 11, 16, 2, and lies north of the road, and extends east to the fence at the cattle-guard.

*Wesley Lehn.* Rode horse to country the Tuesday evening before he was killed; horse broke loose and got away from defendant; next saw him where he was buried near the railroad, where he had been dragged thirty or forty feet south from the road to a point about thirty feet east of the fence; open prairie from depot to where horse was killed; going east, might be seen three or four hundred yards—coming west, might have been seen six hundred yards. The road had been open for use four or five years.

*Joseph Kaufman.* Horse worth $150; describes appearances where horse was killed as does witness Waggoner; thinks he was struck in or near cattle-guard; seemed to have been struck in the hip from behind, and the cow-catcher had inflicted severe injury inside under the shoulder.

*Jo. Drain.* Horse worth $135.

*John Slaughter.* Saw horse next morning after he was struck by the train; hind leg broken, and bad cut under the shoulder; killed horse at request of Stewart, roadmaster, who told hands not to bury him till next day; thinks the injury was effected by the train going east at 1 o'clock A. M.; company have no fence in the vicinity; settlement within five miles east; the road curves before reaching the guard; there are about two hundred feet of straight track after passing the curve immediately west of the guard; road been in use of Great Western Railroad Company, who have run daily trains upon the road, and were doing so about the 16th of October last.

Evidence for defendant:

*Abdiel T. Risley.* Is county surveyor of Macon county; know the cattle-guard spoken of to be half a mile east of the depot, on or about the line between Sections 11 and 12, Township 16, Range 2 east, which line he knows to be the eastern limit of the city of Decatur, where the railroad passes out; never was over the line where the road crosses it, and cannot positively say that the guard is on the line, but is of that impression; knows that there is an established corner three-fourths of a mile north; at this corner the fence spoken of is on the line; knows another established corner one-fourth of a mile south; the line of the fence at this corner is something west of the corner, so that the general direction of the fence from the south end is a little east of north, and the cattle-guard would be a few feet west of the guard, but where the fence on each side approaches to within eight or ten feet of the track, then it bends eastward and towards the cattle-guard; the cattle-guard is evidently very close to the section line; cannot state that the guard, or any part of it, is upon the line or within the corporate limits.

*George Stewart.* Cattle-guard seven feet wide, two feet or twenty-six inches deep; is covered with slats or rails nailed on to stringers; is constructed in the usual manner.

This was all the evidence.

Instructions for plaintiff:

The court instructs the jury, on behalf of the plaintiff, that if they believe, from the evidence, that the defendant, by itself or servants, for want of proper cattle-guards in a place where the defendant was bound to fence on each side of said railroad, or in a place where the defendant was bound to fence said road, or to erect and make cattle-guards—that for want of such fences or cattle-guards, the plaintiff's horse mentioned in the plaintiff's declaration, was injured or killed by getting on to said railroad for want of fences or cattle-guards, then the defendant is liable for the injury done.

The court instructs the jury, that if they believe, from the evidence, that the defendant, by itself or agents, willfully or negligently injured the plaintiff's horse, then the plaintiff is entitled to recover.

Defendant's instructions:

That if the jury believe, from the evidence, that the horse of the plaintiff got upon the railroad track, within the city limits of the city of Decatur, and was there injured or killed by the locomotive of the defendant, and that the proof does not show that the injury or killing was negligently or willfully done, then they should find for the defendant.

It is not the duty of a railroad company to fence its railroad within the limits of any city, village or town, or where the proprietors of adjoining land have fenced, and if any damage is committed upon stock getting upon a railroad track within such limits, such company is not liable, unless the act was negligently or willfully done.

The court further instructs the jury, that in order to charge a railroad company for negligence in running its locomotive and trains of cars, there must be affirmative evidence of acts of negligence, and that the injury complained of resulted from such negligence.

The court then refused to give the following instructions for the defendant:

The court instructs the jury, for the defendant, that in order for the plaintiff to recover in this cause, the jury must believe, from the evidence, that the horse in question

was the property of the plaintiff, and that the same was injured by the defendant, by its agents or servants, and that the same was negligently or willfully done.

A railroad company is not liable for damage for stock escaping from the premises of the owners, and getting upon the track of such road from uninclosed or unoccupied lands, belonging to other persons than such owner, unless such damage was negligently or willfully committed.

It is not the duty of a railroad company to construct and maintain cattle-guards, except at the road-crossings of its railroad.

To which refusal defendant then excepted.

Plaintiff in error assigns the following errors :

The court erred in granting the plaintiff's instructions below.

In refusing instructions asked by defendant below.

In overruling motion of defendant below for a new trial.

In rendering judgment for the plaintiff.

TUPPER & NELSON, for Plaintiffs in Error.

I. The instructions given by the court to the jury for Morthland, the plaintiff below, were improperly given, because inapplicable to the proof in the case, and therefore calculated to mislead the jury. *Hill* v. *Ward*, 2 Gilm. 293.

There is no evidence in this record to support the hypothesis upon which the first instruction for plaintiff below is predicated.

There is no evidence going to show any deficiency or absence of fences or cattle-guards at any point where defendant below was bound to erect and maintain them.

Slaughter is the only witness who speaks upon the subject of the company's fences. His language is : " The company have no fences in the vicinity, and there is a settlement east within five miles." This being the whole evidence on this subject, is insufficient to warrant the first instruction for plaintiff below.

The company might " have no fences in the vicinity,"

because the vicinity might be fenced by the land owners. It might be where it was not necessary, from the nature of the ground or method of the construction of the track, to make a fence. It might be, as in this case is shown by all the proof, within the limits of a city incorporated. Immediately west of where the horse was killed, was within the limits of Decatur.

Within those limits, there was a fence connected with a cattle-guard directly across the direction of the road, and the proof is utterly silent as to whether the road east of the cattle-guard, at the city limits, was fenced or not.

A defect of fence must be averred and proved in order to a recovery by plaintiff below. *Ohio and Mississippi Railroad Company* v. *Brown*, 23 Ill. 95, 96.

This first instruction assumes that there is proof showing a defect of fences when there is no such proof.

II. There is no proof whatever, that this killing was either negligently or willfully done. This court has already decided that proof of a killing is not proof of a negligent or willful killing. *Chicago and Mississippi Railroad Company* v. *Patchen*, 16 Ill. 198.

Therefore, the second instruction for plaintiff below is unwarranted under the proof, calculated to mislead, and therefore improperly given. 2 Gilm. 293.

III. The proof is insufficient to warrant the verdict. It is not shown that the horse did not get on to the track at one of the excepted places enumerated in the statute. This must appear both in the allegations and proof, and a failure of proof is fatal to plaintiff below. 20 Ill. 390; 23 Ill. 95, 96.

On the contrary, the point at which, and the manner in which, he was struck, shows that he must have got on the track within the city limits, and received the injury on the guard, on the eastern limit of the city. If so, proof of negligence or willfulness in the act of running on him must be shown, and this is not done.

The last instruction asked by defendant below, and by the court refused, should have been given.

The duty to construct fences and guards is statutory, and a

railroad company can only be held responsible for failure to construct and maintain them at those places specified in the act.

The limits of a corporate city, town or village is not one of those places; and a defective cattle-guard at the point where the road passed the eastern limit of the city of Decatur, cannot be urged as a ground of recovery for plaintiff below, because the company was not bound to have a guard of any kind there. 23 Ill. 95; Act 14th of February, 1855, p. 173, (Scates, Treat & Blackwell's Stat. 953.)

S. G. MALONE, for Defendant in Error.

The proof shows that there was a fence running north and south across the road at the cattle-guards, and that there was no fence at all made by the railroad company. *Great Western R. R. Co. of* 1859 v. *Helm,* 27 Ill. 198.

The court held, in the case of *Galena and Chicago Union R. R. Co.* v. *Crawford,* 25 Ill. 529, that when the road has not been fenced, etc., the plaintiff need only show the want of the fence, and the damage, etc.

CATON, C. J. There is a cattle-guard across the railroad at or within a few feet of the eastern limits of the city of Decatur. The evidence does not show, nor is it of the least importance, whether the road was fenced east of this point, for it had no connection with the accident. The evidence leaves no doubt on the mind that the plaintiff's horse got upon the track where it passes through the commons within the city limits, and when the midnight train going east came along, it became frightened and ran before the engine on the track, until it came to the cattle-guard at the city limits, when it was struck by the engine and pushed along upon the track fifty or sixty feet, and then was thrown from the track, and was so injured thereby as to become valueless. Upon these simple facts, of which no one who will examine the evidence can entertain a doubt, the question of liability depends. The law which requires railroad companies to fence their roads in certain places, has nothing to do with it, for the horse, beyond

all doubt, got upon the track where no fence was required, and followed it until he reached the cattle-guard, at which obstruction he was overtaken and injured.    Any omission to keep up fences or cattle-guards, if any was proved, did not tend in the most remote degree to produce the injury.    The fault, or the misfortune, if you please, was altogether on the part of the plaintiff in allowing his horse to be loose on the common in the town where the road was not required to be fenced, and whence he strayed upon the track where he had no right to go, and from this cause resulted the injury.    The plaintiff must himself bear the consequences of his own fault or his own misfortune.    There is no proof of carelessness on the part of those in charge of the train.    *Illinois Central R. R. Co.* v. *Phelps*, 29 Ill. 447.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*